# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **_Plaintiff_**, | |
| v. | Civil No. 13-01707 (MAJ) |
| $12,698.38 IN U.S. CURRENCY CONTAINED IN COMMERCIAL ACCOUNT NUMBER XXXXXXXXXXXXXXXX1635 HELD AT FIRST BANK OF PUERTO RICO, AND A BANKERS CHECK, | |
| **_Defendant in rem_**, | |

## OPINION AND ORDER

### I.      Introduction

Before the Court is a Motion to Dismiss (**ECF No. 33**) filed by Hormigonera del Sur Corp. and Luis Santana Mendoza ("Claimants") challenging the Civil Forfeiture Complaint (the "Complaint") (**ECF No. 2**) brought by the United States of America (the "Government"). On September 18, 2013, the Government initiated the instant civil action _in rem_ to enforce the forfeiture of $12,698.38 in U.S. currency because it is allegedly traceable or involved in various criminal offenses, including the structuring of financial transactions, money laundering, and drug trafficking. (**ECF No. 2**).[1]

Claimants contest the Government's forfeiture action on several grounds. These

---

[1]      Specifically, the Complaint asserts 31 U.S.C. § 5324 (structuring transactions to evade reporting requirement prohibit), 31 U.S.C. 5317 (search and forfeiture of monetary instruments), 18 U.S.C. § 981 (civil forfeiture), 18 U.S.C. § 982 (criminal forfeiture), 18 U.S.C. § 1956 (laundering of monetary instruments), and 21 U.S.C. § 881 (forfeiture of money traceable to distribution of controlled substances) form the basis for the forfeiture of Defendant property. _Id._ at 2-3.

include that the Complaint fails to meet the pleading requirements of Rule G(2) of the Supplementals Rule of Certain Admiralty and Maritime Claims ("Supplemental Rules") (**ECF No. 33**). Second, that the Government's action is time-barred. *Id.* Third, that due process violations under the Fifth Amendment, procedural defects, and an Eighth Amendment violation necessitate dismissal. *Id.*

For the reasons detailed below, Claimants' Motion to Dismiss is **GRANTED** *in part* and **DENIED** *in part*. (**ECF No. 33**).

## II.     Background[2]

On September 18, 2013, the Government initiated a civil forfeiture action against $12,698.38 in U.S. currency, citing financial activity by and on behalf of Hormigonera del Sur Corp. ("Hormigonera") and Luis Santana Mendoza ("Santana") as violating 31 U.S.C. § 5324(a)(3). (**ECF Nos. 2, 2-1 at 4, 7**). According to the Government's Complaint and the Declaration incorporated therein, Santana is the owner of various construction companies. (**ECF No. 2-1 at 5**).[3] On December 13, 2011, Santana allegedly opened a "commercial account" at a FirstBank branch located in Fajardo, Puerto Rico under the name of "HORMIGONERA DEL SUR CORP." *Id.* Hormigonera is a corporation located in Puerto Rico and per business records, "its business volume has never exceeded three million dollars." *Id.* at 7.

Specifically, it is alleged from March 2012 to September 2012, that Hormigonera "and/or" Santana structured currency deposits into a FirstBank commercial account to evade reporting requirements. *Id.* at 4-6. The Government claims Santana, an authorized

---

[2]     The facts recounted from the Complaint and Declaration do not constitute findings of fact by the Court.

[3]     The Declaration also indicates that Santana has a prior federal felony conviction under 21 U.S.C. Section 331(a) for introducing or delivering non-compliant or mislabeled products into interstate commerce. *Id.* 4-5.

signatory, deposited $254,475.10 into the account. (**ECF No. 2-1 at 5-7**).[4] Furthermore, the Government claims $142,018.12 of this amount was structured to evade reporting laws, as only two currency transaction reports were filed in Hormigonera's name in 2012, totaling $23,136.00. *Id.* at 5-6. The Declaration states that under the fungible property statute, 18 U.S.C. § 984, the Government does not need to precisely trace the funds in an account back to their original deposits if it initiates forfeiture within one year of the offense. (**ECF No. 2-1 at 6**). It further asserts that there is probable cause to believe violations supporting forfeiture occurred under 31 U.S.C. §§ 5324, 5317; 18 U.S.C. §§ 981, 982, 1956; and 21 U.S.C. § 881. *Id.* at 7.

On the same day the Government launched the forfeiture action, it simultaneously filed a Motion to Stay the forfeiture proceedings due to an ongoing criminal investigation involving potential claimants. (**ECF No. 1, 3**).[5] Subsequently, the Court issued a warrant *in rem* for the currency on September 25, 2013. (**ECF No. 8**). More than ten years later, on November 17, 2023, the Government notified interested parties of the forfeiture action through a Notice of Publication. (**ECF No. 26**). On December 13, 2023, a verified claim was filed by Hormigonera and Santana asserting an interest in the seized $12,698.38 in U.S. currency. (**ECF No. 28**).

Subsequently, on January 29, 2024, Hormigonera and Santana ("Claimants") filed the instant Motion to Dismiss and for Return of Property as to the Defendant currency.

---

[4]     The Declaration also identifies Pedro Santana Delgado as an authorized signatory. (**ECF No. 2-1 at 4**). However, said individual has not joined Claimants in the instant Motion, therefore the Court will omit any factual allegations as it relates to Pedro Santana Delgado.

[5]     The instant action is related to a series of civil forfeiture cases brought by the Government against various defendant *in rem* property, all stemming from a related criminal prospection, *United States v. Morales-Davila et al.*, 14-cr-00754. *See United States v. $577,728.85 in U.S. Currency, et al.*, 12-cv-01803; *United States v. $933,000.00 in U.S. Currency et al.*, 13-cv-01170; *United States v. $170,000 in U.S. Currency et al.*, 13-cv-01318; *United States v. $2,880.00 in U.S. Currency et al.*, 15-cv-01715. The claimants and the grounds on which they challenge these forfeiture actions are not uniform across these cases for that reason, the Court will only discuss the instant matter at bar.

(**ECF No. 33**).

The Government countered on February 29, 2024, filing a Response in Opposition (the "Opposition"), arguing that the Complaint met all legal requirements for forfeiture under Rule G(2) and denied any delay in its prosecution of the forfeiture which proceeded alongside a "parallel criminal case, as allowed by law." *Id.*

## III.   Legal Standard

Civil forfeitures are not contingent upon the criminal convictions of the owners of the seized property because a civil forfeiture proceeding is an *in rem* action which proceeds on the legal fiction that the seized property itself is guilty of wrongdoing. *United States v. One Rural Lot*, 739 F. Supp. 74, 77 (D.P.R. 1990).

Civil forfeiture actions must comply with the heightened pleading requirements of Supplemental Rule G(2), which demands that the complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). Applied here, the Government's civil forfeiture action must comply with the more stringent pleading requirements of the Supplemental Rules rather than the liberal provisions of Fed. R. Civ. P. 8. *See United States v. One Parcel of Real Prop. With Bldg., Appurtenances, & Improvements Known as 304-390 W. Broadway, S. Bos., Mass.*, 964 F.2d 1244, 1248 (1st Cir. 1992) ("[T]he Admiralty Rules demand more particularity in the crafting of forfeiture complaints than is generally required in authoring complaints under the Civil Rules.").

While the Court accepts as true all factual allegations and draws reasonable inferences in the Government's favor—the heightened pleading standard requires more than mere conclusory allegations. *Cebollero-Bertrán v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69-70 (1st Cir. 2021); *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir.

2002). However, the allegations in the complaint need not stand alone when a supporting affidavit details the factual allegations underlying the complaint. *United States v. $20,000 in U.S. Currency*, 589 F. Supp. 3d 240, 252 (D.P.R. 2022) (citing *United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir. 1989) (the affidavit, which had "the dates, circumstances, location and parties to the alleged drug transactions as well as the drugs and drug paraphernalia seized from the premises, cured any defect in the complaint").

To determine whether a complaint complies with Supplemental Rules G(2)(f) and E(2)(a), courts look to the totality of the evidence. *Medina-Rodríguez v. $3,072,266.59 in U.S. Currency*, 471 F. Supp. 3d 465, 474-75 (D.P.R. 2020). While the Government is not required at the pleading stage to meet its ultimate burden of establishing the application of forfeiture by a preponderance of the evidence, it "may not seize and continue to hold property upon conclusory allegations that the defendant property is forfeitable." *United States v. $1,399,313.74 in U.S. Currency*, at 370.

The Government is also not required to allege in the complaint all of the facts and evidence at its disposal. *United States v. Eleven (11) New Util. Vehicles*, 13-cv-1776, 2014 WL 4385734, at *10 (D.P.R. Sept. 4, 2014). It is sufficient for the Government to "simply plead enough specific facts for the claimant to understand the government's theory ... and undertake her own investigation." *Id.* The issue is one of pleading, not proof at trial. *United States v. $1,399,313.74 in U.S. Currency*, at 370.

With respect to Fed. R. Civ. P. 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Finally, a defendant may raise the affirmative defense of statute of limitations via

a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *United States v. Eight Hundred Thousand One Hundred Twenty-Seven Dollars & Seventy Cents*, 04-cv-2118, 2005 U.S. Dist. LEXIS 41287, at *3-4 (D.D.C. Mar. 29, 2005) (internal citation omitted). However, the "court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint" because "statute of limitations issues often depends on contested questions of fact." *Id*.

## IV.   Applicable Law for Civil Forfeiture of Property

18 U.S.C. § 981(a)(1)(A) serves as a "broad" foundational statute in the civil forfeiture framework. It permits forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section[s] 1956, 1957 or 1960 of this title, or any property traceable to such property." *See United States v. All Monies ($477,048.62) In Acct. No. 90-3617-3, Israel Disc. Bank, New York, N.Y.*, 754 F. Supp. 1467, 1473 (D. Haw. 1991) ("broad language and legislative history of 18 U.S.C. § 981 and 21 U.S.C. § 881 makes it clear that any property involved in illegal activity in a way which facilitates that activity is forfeitable").

### a.   Structuring

Financial institutions, such as banks, must report cash transactions over $10,000 to the government. *See United States v. $134,972.34 Seized from FNB Bank, Acct. No.-£5351*, 94 F. Supp. 3d 1224, 1226 (N.D. Ala. 2015). 31 U.S.C. § 5324(a) prohibits structuring transactions with domestic financial institutions for the purpose of evading specified reporting or record-keeping requirements imposed by federal law. "Structuring" in the banking industry refers to executing financial transactions, such as bank deposits or withdrawals, in a way that avoids records and reports required by law. *See United States v. $134,972.34 Seized from FNB Bank, Acct. No.-£5351*, 94 F. Supp. 3d 1224 at

1226 (N.D. Ala. 2015). The "structuring" entails breaking down larger transactions that would otherwise exceed $10,000 into a series of smaller transactions to avoid such reporting requirements, and to avoid scrutiny by regulators or law enforcement officers. *Id.*

31 U.S.C. § 5317 provides for the forfeiture of any property involved in violations of 31 U.S.C. § 5324. *United States v. One Hundred & Three Thousand Seven Hundred & Ten Dollars & No Cents*, 13-cv-4995, 2015 WL 758460, at *3 (E.D.N.Y. Feb. 19, 2015). Notably, it is irrelevant "whether the cash at issue represents criminal or lawful proceeds." *United States v. 11,552.73 in United States Currency*, 07-cv-11759, 2009 U.S. Dist. LEXIS 126430, at *12 (D. Mass. May 28, 2009) (citing *United States v. MacPherson*, 424 F.3d 183, 193 (1st Cir. 2005)).

### b.   Money Laundering

To prove its money laundering claim, the Government must demonstrate: (1) "that the defendant conducted a financial transaction"; (2) "that the transaction in fact involved the proceeds of specified unlawful activity"; and (3) that the defendant knew that the "transaction is designed … to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." *See* 18 U.S.C. § 1956(a)(1)(B)(i); *United States v. Prevezon Holdings, Ltd*., 251 F. Supp. 3d 684, 688 (S.D.N.Y. 2017).

As to the third element known as the "concealment requirement," 18 U.S.C. § 1956(a)(1)(B)(ii), the Third Circuit has explained the "avoidance of reporting requirements [under § 1956(a)(1)(B)(ii)] strikes us as but one method of *concealing* large amounts of *illicit* proceeds." *United States v. Navarro*, 145 F.3d 580, 589 (3d Cir. 1998) (emphasis added).

In short, "laundering" "transforms[] 'dirty' funds from illegal activities into a 'clean' and usable form." *See United States v. Shepard*, 396 F.3d 1116, 1119 (10th Cir. 2005). With this framework in mind, the Court will evaluate the sufficiency of the Complaint under Supp. R. G(2)(f).

## V.   Discussion

### a.   Sufficiency of the Complaint under Rule G(2)'s Heightened Standard

In evaluating the sufficiency of the Government's Complaint under the heightened standards of the Supplemental Rules, the Court first scrutinizes the allegations concerning the forfeiture of funds allegedly involved in structured transactions followed by allegations of money laundering.[6]

### i.   Allegations Regarding Structuring of Cash Deposits

The Complaint alleges that Claimants made deposits in the corporation's commercial bank account between March and September 2012 for a total amount of $254,475.10. (**ECF No. 2-1 at 6-8**). Claimants challenge the sufficiency of the Complaint, claiming it improperly "concludes without any factual support, that $142,018.12 of the total deposited [amount] [was] structured." (**ECF No. 33 at 7**).

---

[6]    Neither the Government nor Claimants have raised the issue of standing in their submissions to the Court. Nevertheless, the First Circuit has established that standing in forfeiture cases must be determined based on the claimant's burden to show a colorable interest in the property. *See United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003). It is well established that a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture. *United States v. One Parcel of Real Prop. with Bldgs., Appurtenances & Improvements Known as 116 Emerson St., Located in City of Providence, R.I.*, 942 F.2d 74, 78 (1st Cir. 1991). Although Claimants have not provided direct evidence of ownership as the Declaration indicates, Claimant Santana opened the Hormigonera "commercial account" in 2011 and was an authorized signatory of that account which is where the Government seized the property at issue here. (**ECF No. 2-1**). Accordingly, Santana had constructive possession of the account's funds, therefore, the Court finds that Santana has a sufficient interest to establish standing. *United States v. One Parcel of Real Prop. with Bldgs., Appurtenances & Improvements Known as 116 Emerson St., Located in City of Providence, R.I.*, 942 F.2d 74 at 78.

Moreover, Claimants contend "the Complaint does not allege that the seized funds intended to be forfeited were traceable to the structuring offense." *Id*. at 8.

Despite Claimants' arguments to the contrary, the Complaint and Declaration collectively establish a pattern of deposit transactions indicative of structuring aimed at evading reporting requirements. (**ECF No. 2-1**). The Declaration reveals that between March and September 2012, 19 cash deposits each under the $10,000 threshold were made. *Id*. The frequency of these deposits varies. *Id*. However, several clusters of deposits were made within a short time frame, and there are multiple instances where deposits are made on consecutive days or within a few days. *Id*. For example, from June 14 to June 20, 2012, there are four deposits. *Id*. Similarly, in July 2012, deposits occur on July 11, 13, 26, and 27. *Id*. Additionally, there were deposits under $10,000 made on August 8, 9, 10, 13, 15, 29, 30, and September 17, 18. *Id*.

Courts have recognized similar behaviors as structuring attempts. *See e.g*., *United States v. $776,670.00 previously contained in Bank of Am. account number 000376803507 held in the name of Shin's Trading, DBA Cala Prod.*, 13-cv-4108, 2014 WL 1669929, at *3 (D.N.J. Apr. 28, 2014) (finding over a one-year period, numerous deposits on the same or consecutive days, under $10,000, gave "rise to the 'reasonable belief' that the deposits were knowingly structured to evade" reporting); *United States v. $263,327.95*, 936 F. Supp. 2d 468, 470, 475 (D.N.J. 2013) (concluding that the complaint pled sufficiently detailed facts to support defendant acted with the intent to evade reporting where complaint attached a spreadsheet detailing deposits of "large sums of money without making a single deposit of over $10,000" over a year.).

Similarly, in *United States v. Bird*, the Eleventh Circuit upheld defendant's conviction for illegally structuring a financial transaction to evade reporting

requirements, even without direct evidence of his intent. 79 F.4th 1344 (11th Cir. 2023). There, the Court found 38 cash deposits, all under $10,000, made over the course of seven and a half months, with a "handful of deposits occur[ing] on consecutive days, and others . . . within a few days of each other," supported the inference that the deposits were structured to avoid reporting. *Id. at* 1350; *see also United States v. Nersesian*, 824 F.2d 1294, 1314–15 (2d Cir. 1987) (noting a "series of small transactions over a number of days, rather than . . . several larger transactions," supports the inference "that [defendant] knew of the reporting requirements and was attempting to avoid them.").

Here, the Complaint pleads facts supporting a reasonable belief that the Government can prove structuring at trial. As previously stated, Claimants made 19 cash deposits under $10,000 over six months, totaling $142,018.12, with several on consecutive days or within days of each other. (ECF No. 2-1). This suggests the deposits were broken down from transactions over $10,000 to evade reporting, which is impermissible structuring, even if spread over days. (**ECF No. 2-1**). *See In re Seizure of Any & All Funds on Deposit in Wells Fargo Bank, NA Acct. No. xxxxxxxxxxxx*, 25 F. Supp. 3d 270, 277 (E.D.N.Y. 2014) ("breaking down cash transactions totaling over $10,000 into smaller sums for the purpose of evading the financial reporting requirement constitutes impermissible 'structuring', even if the transactions are conducted over the course of several days.").

The Complaint thus pleads sufficient facts alleging structured transactions violating 31 U.S.C. §§ 5317(c) and 5324 to defeat the Motion, regardless of the source of the funds. *See United States v. 11,552.73 in United States Currency*, 2009 U.S. Dist. LEXIS 126430, at *12 (D. Mass. May 28, 2009).

ii.     Statutory Time Limit under § 984(b) under § 984

Finding the structuring offense sufficiently pled against the Defendant property, the Court must next address Claimants' contention that the Government's forfeiture attempt of allegedly structured funds is time barred under 18 U.S.C. § 984. (**ECF No. 33 at 7-9**).

Claimants' Motion claims, "the purported last structured deposit [occurred] on September 18, 2012" and the "Complaint was filed on September 18, 2013"—a day beyond the one-year statutory deadline for initiating actions under 18 U.S.C. § 984. (**ECF No. 33 at 7-8**). Claimants contend "365-days of the one-year period the government had to commence any forfeiture action without having to strictly trace the allegedly structured funds to the structuring offense ended on September 17, 2013." (**ECF No. 33 at 2-3**). As a consequence, Claimants conclude the "Complaint is time-barred and should be dismissed pursuant to [the] Section 984 statute of limitation." *Id.* at 9.  The Government's Opposition does not address this issue. Nevertheless, the Court disagrees with Claimants' reading of the statutory period proscribed by 18 U.S.C. § 984.

Section 984 of the U.S. Code does not create a separate forfeiture action but addresses issues arising when the government seizes money or other fungible properties under § 981. *See United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 158–59 (3d Cir. 2003); *United States v. Currency, 300,000 Seized from Bryant Bank Acct. No. XXX-XX-XXXX*, 12-cv-2431, 2013 WL 1498972, at *3 (N.D. Ala. Apr. 9, 2013). Since these assets cannot be physically traced once commingled or deposited, 18 U.S.C. § 984—the fungible property statute—allows the government to "substitute" "any identical property found in the same place or account as the property involved in the offense." *United States v. Currency, 300,000 Seized from Bryant Bank Acct. No. XXX-XX-XXXX*, 2013 WL

1498972, at *3.

Applied here, this would allow the Government to substitute actual structured currency with identical currency found in the Defendant bank account. *See id.* However, Congress put a limit on this eased burden, providing that any action to forfeit property not directly traceable to the offense "be commenced" within one year. *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141 at 158–59; *see United States v. Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d 8, 16 (1st Cir. 2007) ("Section 984 provides for the forfeiture of 'any identical property found in the same place or account as,' inter alia, forfeitable 'funds deposited in an account in a financial institution,' 18 U.S.C. § 984(a), so long as the forfeiture action is commenced within one year of the underlying offense.").

The statutory time limit under § 984(b) states: "[n]o action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced *more than 1 year* from the date of the offense." 18 U.S.C. § 984(b) (emphasis added).

The Court's approach to statutory interpretation is straightforward: "begin[]with the statutory text and end[] there as well if the text is unambiguous." *United States v. Currency, 300,000 Seized from Bryant Bank Acct. No. XXX-XX-XXXX*, 2013 WL 1498972, at *4. Indeed, we take words at their "ordinary, plain meaning unless defined otherwise." *Id.* at *5. Now, § 984(b) plainly states that forfeiture actions cannot commence *more than one year* from the date of the offense. 18 U.S.C. § 984(b). This does not require any advanced arithmetic, as 984(b)'s unambiguous statutory time limit means exact calculations based on a plain reading can readily be determined.

In this case, the action was initiated precisely one year from the date of the offense, as undisputed by Claimants. (**ECF No. 33 at 8**). Section 984(b) "means what it says"—

*exactly one year* does not stretch to "*more than 1 year,*" as Claimants' suggestions would have us believe. *See* 18 U.S.C. § 984(b) (emphasis added); *see also Rodriguez v. Am. Int'l Ins. Co. of Puerto Rico*, 402 F.3d 45, 49 (1st Cir. 2005) ("courts must presume that a legislature says in a statute what it means and means what it says there.").

Claimants wrongly argue that the Government's deadline to commence an action was September 17, 2013, which is 364 calendar days from the last alleged structured transaction. (**ECF No. 33 at 2, 7-9**); s*ee also United States v. Joseph*, 765 F. Supp. 326, 327–28 (E.D. La. 1991) (agreeing with government's interpretation "that the limitations period actually begins to run on the day following the day the crime was committed" thus the "anniversary date of the offense is included in the limitations period."). Instead, the Government had until September 18, 2013, to commence a timely action under § 984(b), which it did. (**ECF No. 2**). Accordingly, the Court finds the Government commenced this forfeiture action within the statutory limit proscribed by § 984(b) and is thus not time-barred. *Id.*

Additionally, even if the § 984(b) deadline had expired, Claimants overstate its impact on this forfeiture action. Claimants argue that exceeding the one-year deadline under § 984(b) should result in dismissal, but this is not automatic. (**ECF No. 33 at 10**). If the deadline expired, the Government would lose the relaxed traceability requirement of § 984. Instead, the Government would need to follow the traceability criteria in § 981 and § 5317 for forfeiture of the structured currency.[7] *See United States v. $79,650 Seized*

---

[7]      The Complaint and Declaration assert that 18 U.S.C. §§ 5317, 981, 982, 881, and 984 serve as the basis for forfeiture. (**ECF Nos. 2 at 2; 2-1 at 6**). However, "§ 982 provides for criminal forfeiture penalties upon *conviction* for money laundering, in violation of § 1956. Specifically, an individual *convicted* of money laundering under § 1956 must forfeit . . . 'property . . . involved in such offense' 18 U.S.C. § 982(a)(1)." *See In re Restraint of Bowman Gaskins Fin. Grp.*, 345 F. Supp. 2d 613, 623–24 (E.D. Va. 2004) (emphasis

*from Bank of Am. account ending in -8247, in name of Afework*, 08-cv-1233, 2009 WL 331294, at *5 (E.D. Va. Feb. 9, 2009) (finding because the complaint did "not rely solely on § 984" the property involved in structuring was still subject to forfeiture under 31 U.S.C. § 5317(c)(2) and 18 U.S.C. § 981(a)(1).).

The Court, therefore, finds that Claimants' Motion to Dismiss based on the expiration of the statutory period under § 984(b) meritless. *See $79,650 Seized from Bank of Am. account ending in -8247, in name of Afework*, WL 331294, at *4 (noting "dispute over the one-year time limit does not affect the question at issue here, which is . . . whether the Complaint alleges 'facts sufficient to support a reasonable belief that the property is subject to forfeiture.'"). Accordingly, Claimants' Motion is **DENIED** as it relates to the structuring allegations under 31 U.S.C. §§ 5324, 5317, and forfeiture under 18 U.S.C. §§ 981 and 984(b).

iii.   <u>Allegations of Money Laundering</u>

The Government's claim for forfeiture under 18 U.S.C. § 981(a)(1)(A) and 1956 as it relates to allegations of money laundering is on far less solid footing. Claimants assert "there should be no dispute that there is [sic] no money laundering allegations in the Complaint." (**ECF No. 33 at 7**). Moreover, they specify the Complaint "does not even imply that any of the funds deposited by Hormigonera were 'proceeds' of a specified unlawful activity." According to Claimants, the "Complaint in this case must have alleged the commission of the 'specified unlawful activity' and subsequent transaction with proceeds or derived property of such specified unlawful activity to substantiate a money

---

added). As applied here, the parallel criminal case to this civil action is ongoing and there has not been a conviction in relation to the property involved in the offenses alleged before this Court. *See United States v. Morales-Dávila et al.*, 14-cr-00754-MAJ (D.P.R.). For that reason, forfeiture under 18 U.S.C. § 982 is premature.

laundering forfeiture claim." *Id*. Thus, they contend, "the Complaint grossly fails to allege any forfeiture basis under § 981." *Id*.

The Court observes that the Complaint, as drafted, focuses almost exclusively on the purported structuring violations, leaving the money laundering claim notably unexplored. (**ECF Nos. 2, 2-1**). While the Declaration does make passing mention of a Claimant Santana's prior conviction related to misbranded products, the Complaint and Declaration rely heavily on generic, off-the-shelf descriptions of trade craft "typical of narcotic traffickers and money launderers." (**ECF No. 2-1 at 1-3**). This general and conclusory recitation of "business practices" is untethered to any factual allegations. *Id*. at 1. Moreover, the Government stops *well* short of alleging Claimants' involvement in drug trafficking, or another specified unlawful activity that would generate the alleged structured funds, nor does it show that transactions were designed to conceal the source of such proceeds. *See e.g., United States v. Cruzado-Laureano*, 440 F.3d 44, 46 (1st Cir. 2006) ("Money laundering is, generally speaking, a derivative offense: money needs to be laundered because it was illegally derived."); *United States v. Sickels*, 09-cr-00385, 2011 U.S. Dist. LEXIS 43450, at *3-4 (D. Nev. Apr. 20, 2011) (charges arising out of defendant's structuring of transactions, whereby he deposited drug profits into bank account in amounts under $10,000 to circumvent reporting requirements was appropriately charged as money laundering under 18 U.S.C. § 1956.).

While the Government need not detail all evidence intended for trial, merely reciting elements of 18 U.S.C. §§ 1956 and 881 is insufficient at this preliminary stage. *See Twombly*, 550 U.S. 544 (2007); *United States v. Eleven (11) New Util. Vehicles*, 2014 WL 4385734, at *10. Moreover, merely alleging Claimant Santana's prior conviction along with a pattern of structuring does not support a reasonable inference that the funds were

proceeds from a specified unlawful activity, or that they were intended to be laundered under 18 U.S.C. § 1956. *See cf.*, *United States v. Williams*, 605 F.3d 556, 566 (8th Cir. 2010) (holding sufficient evidence demonstrated defendant's intent to conceal the source of his illegal funds through his structuring, using a fictitious name for cash deposits which indicates more than simply hiding money from reporting requirements; it suggests an intent to obscure the origin and nature of the funds.).

Based on the facts presented, Claimants' Motion is **GRANTED** with respect to the Government's money laundering theory pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 1956.

### b.    Constitutional and Procedural Challenges

Before evaluating whether Due Process under the Fifth Amendment justifies dismissal here, it is worth providing a succinct summary of Claimants' overall theory of purported government action and inaction. The Motion asserts:

> The government filed this forfeiture Complaint and kept it sealed and the case stayed for the past ten years without giving any opportunity to Claimants to be heard . . . *Claimants were kept in the dark; unaware of this sealed proceeding*. There had been no opportunity for Claimants to object to the stay or the sealing. . . much less to object to the merits of the forfeiture, or have an impartial judicial officer examine the ex parte taking of funds . . . In the meantime, the government has divested Claimant of the rightful use of their assets. . . . The government did not publish the fact of this civil complaint nor gave direct notice to Claimants until after ten years of seizing the funds . . . [thus] the Complaint should . . . be dismissed pursuant to the Due Process Clause.

(**ECF No. 33 at 3**) (emphasis added). The Court now addresses the substantive claim of delay under the Fifth Amendment followed by Claimants' procedural and Eighth Amendment claims.

### i.    Application of *Barker* Test for Due Process Violation

First, to determine whether this civil forfeiture action warrants dismissal due to a Fifth Amendment Due Process violation stemming from the Government's prolonged

delay in prosecution, the Court will apply the test articulated in *Barker v. Wingo*, 407 U.S. 514 (1972). The *Barker* test, which the U.S. Supreme Court first used to address Sixth Amendment speedy trial rights, was later adapted to scrutinize due process concerns in civil forfeiture scenarios, as established by *United States v. $8,850 in U.S. Currency*, 461 U.S. 555 (1983). In determining whether significant delays in civil forfeiture actions run afoul of the Fifth Amendment's Due Process clause, "inaction in a forfeiture case mirrors the concern of undue delay encompassed in the right to a speedy trial." *Id*. at 564.

Importantly still, because civil forfeiture involves property rather than the "constitutional rights of individuals", Sixth Amendment protections applied to property is not exact, and "none of [*the Barker*] factors is a necessary or sufficient condition for finding unreasonable delay." *See United States v. $100,375.00 in U.S. Currency*, 70 F.3d 438, 440-41 (6th Cir. 1995); *United States V. One Altered Colt Ar-15 Rifle*, 84-cv-1262, 1986 U.S. Dist. LEXIS 26907, at *8 (N.D. Ill. Apr. 10, 1986); *United States v. $8,850 in U.S. Currency*, 461 U.S. 555 (1983). Nevertheless, the Court elaborated that timeliness in civil forfeiture cases must be assessed by "analog[izing] . . . to a defendant's right to a speedy trial." *$8,850 in U.S. Currency*, 461 U.S. 555 at 564.

Courts have also consistently acknowledged that the protection of due process extends also to conduct once the action "has been filed." *United States v. $59,074.00 in U.S. Currency*, 959 F. Supp. 243, 250 (D.N.J. 1997) (citing *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 (2d Cir. 1986). Indeed, as "far as the delay in litigating the case after the complaint was filed" the First Circuit clarified, "delays after filing a complaint, where there is no prejudice to the claimant, do not violate due process." *United States v. $20,000 in U.S. Currency*, 589 F. Supp. 3d 240 at 260 (citing *United States v. Zorrilla-Echevarría*, 671 F.3d 1, 12 (1st Cir. 2011) (finding that there was "no

denial of due process" when "[t]he only delay complained about here was not in the starting of the forfeiture procedures, but to hearing [claimant's] claim to the money" and that the person was not prejudiced by the delay)).[8]

In this context, the *Barker* test requires weighing four factors: (1) the "length of delay"; (2) the "reason for the delay"; (3) the claimant's "assertion of [their] right" to a hearing; and (4) the "prejudice" to the claimant. *See $8,850*, at 564. While length of delay "'is to some extent a triggering mechanism' no single factor is dispositive." *United States v. Real Prop. Known as 223 Spring Water Lane*, 18-cv-0315, 2020 U.S. Dist. LEXIS 266538, at *11 (E.D. Ky. Apr. 6, 2020) (quoting *$8,850*, at 565). Nevertheless, the Supreme Court has confirmed that these factors are "appropriate guides in the civil forfeiture context" because the factors "ensure that the flexible requirements of due process have been met." *Culley v. Marshall*, No. 22-585, 2024 WL 2061138, at *5 (U.S. May 9, 2024).

Starting with the first *Barker* factor, the length of delay, the Court finds the over ten-year delay in prosecuting the Defendant *in rem* since the initial seizure presumptively prejudicial. *See Doggett v. United Sta*tes, 505 U.S. 647 (1992). Accordingly, the first factor weighs in favor of Claimants.

The Court delves into the second factor, the justification for the delay, by examining the procedural history that shapes the Government's actions. Alongside the

---

[8]     Although *United States v. Zorrilla-Echevarría* did not explicitly extend the *$8,850*—or *Barker*—test to due process claims for delays in both initiating and litigating forfeiture actions, the district court in *United States v. $20,000 in U.S. Currency* relied on the First Circuit's finding of no prejudice to the claimant to adopt the broader application. 671 F.3d 1, 12 (1st Cir. 2011); 589 F. Supp. 3d 240, 260 (D.P.R. 2022). Given the application of the test to alleged delays in both initiating and litigating civil forfeiture actions, the Court will follow suit. *See United States v. $307,970.00, in U.S. Currency*, 156 F. Supp. 3d 708, 716 (E.D.N.C. 2016) (finding "the 'flexible' due process principles articulated by the [Supreme] Court easily are expanded . . . to determine whether delay in the litigation process violates the forfeiture claimants' due process rights.")

Complaint filed on September 18th, 2013, the Government submitted a Motion to Restrict the Declaration (**ECF No. 1**), a Motion to Stay the Civil Forfeiture Proceedings (**ECF No. 3**), and a Motion for Issuance of Warrant in rem and Seizure (**ECF No. 4**). In its request for the Stay, the Government invoked 18 U.S.C. § 981(g)(1), which states in relevant part: "[u]pon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." (**ECF No. 3**).[9]

On September 24, 2013, the Court issued orders granting the Motion to Restrict (**ECF No. 5**) and the Motion to Stay under 18 U.S.C. § 981(g)(1) "out of concern that the instant civil case may hinder a related criminal investigation." (**ECF No. 6**). The next day, the Court issued an Order, granting the Motion for Issuance of Warrant *in rem*, noting the Court had been "duly advised of all the pertinent facts." (**ECF No. 7**).

On November 3, 2015, the Government moved to Continue the Stay (**ECF No. 9**), which the Court granted on December 7, 2015, "pending resolution of adjacent proceedings before the Court" (**ECF No. 10**). On September 25, 2023, the Government moved to lift the stay and unseal the matter, which the Court approved. (**ECF Nos. 16, 17**).

Bearing all this in mind, the Government insists that it "never abandoned its pursuit of forfeiture of the Defendant In Rem. It simply stayed the civil forfeiture proceeding to pursue forfeiture . . . in [the] criminal proceedings." (**ECF No. 38 at 2**). Moreover, according to the Government, its "intent to pursue forfeiture within the context

---

[9]    *See United States v. Morales-Dávila et al.*, 14-cr-00754.

of the criminal case was clear from a reading of the Indictment [and] Bills of Particulars." *Id*.[10] The Government further underscores that a status conference for the criminal matter held on July 13, 2023, raised the civil forfeiture issue. (**ECF No. 38 at 2**) (citing *United States v. Morales-Dávila et al*., 14-cr-00754, (**ECF No. 2632**).[11] Specifically, during the status conference, Santana's counsel indicated that a motion for change of plea would be filed shortly thereafter. *Id*. In response, the Government noted that the "plea agreement does not contain the forfeiture provisions, [and] that a hearing will be requested to address the forfeiture." *Id*.

Claimants acknowledge that "the government may submit information *ex parte* to avoid hampering an ongoing criminal investigation or trial under 18 U.S.C.(g)(3)." (**ECF No. 33 at 21-22**). However, they contend the "forfeiture civil case stay motion cannot proceed unless it is supported by the circumstances of the case as presented to the court by the moving party. In this case, the court stayed the case without any proper basis." *Id*. at 22. The Court disagrees.

Stays of civil forfeiture actions are "routinely granted during the pendency of related criminal proceedings." *United States v. $278,780.80 in Funds*, 2012 U.S. Dist. LEXIS 144031, at \*6-7 (S.D.N.Y. Oct. 4, 2012); *see also United States v. Ninety-Three Firearms*, 330 F.3d 414 (6th Cir. 2003) ("pending criminal proceedings present similar justifications for delay in instituting civil forfeiture proceedings."). Indeed, the statute

---

[10]    The Government cites to ECF Nos. 221, 300, and 467 as demonstrating its intent to pursue forfeiture within the criminal case. (**ECF No. 38 at 2**). Upon review, neither ECF Nos. 221 nor 467 mention that the Defendant currency, at issue *here*, is subject to forfeiture based on the allegations set forth in the criminal Indictment. As previously mentioned however, ECF No. 300 does indeed state, Defendant *in rem*, "\$12,698.39" is subject to "forfeiture" based on the criminal case. *See United States v. Morales-Dávila et al*., 14-cr-00754-MAJ (D.P.R.).

[11]    The Government's Opposition erroneously cited ECF No. 2362 instead of ECF No. 2632 in reference to the status conference held on July 13, 2023, in *United States v. Morales-Dávila et al*., 14-cr-00754-MAJ (D.P.R.). (**ECF No. 38 at 2**).

underlying such stays is mandatory; according to 18 U.S.C. § 981(g)(1), "the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." *United States v. $278,780.80 in Funds*, 2012 U.S. Dist. LEXIS 144031, at *6-7.

Here, the Government has provided sufficient justification for the delay for purposes of the second *Barker* factor. As noted, the Court granted the Government's Stay "out of concern" of its effect on the related criminal matter. (**ECF No. 6**). That same day, the Court's Order granting Issuance of Warrant, noted "it had been advised of all the pertinent facts." *Id.* at 7. Moreover, the related criminal case initially involved seventeen defendants under indictment and currently remains active, with more than 2,800 docket entries filed.[12]

The complexity of the multi-defendant criminal proceedings, along with the Court sanctioned stays under 18 U.S.C. § 981(g) support the Government's justification for delay. *See United States v. $278,780.80 in Funds*, 2012 U.S. Dist. LEXIS 144031, at *8 (S.D.N.Y. Oct. 4, 2012) (finding "stay of the civil proceeding [] appropriate" and that the court was "not troubled with the unknown duration of the stay" as the criminal matter is subject to the "Speedy Trial Act" in the interim and "the funds are properly safeguarded."). Thus, this factor weighs in the Government's favor.

As to the third factor, a claimant's inaction, and failure to consistently assert their rights "weighs heavily against him" in the due process analysis. *See United States v. Scarfo*, 41 F.4th 136, 222 (3d Cir. 2022), *cert. denied sub nom., Pelullo v. United States*,

---

[12]    *See United States v. Morales-Dávila et al.*, 14-cr-00754.

143 S. Ct. 1549, 215 L. Ed. 2d 201 (2023); *see also United States v. Fifty-Two Thousand & Eight Hundred Dollars ($52,800.00) in U.S. Currency & Int*., F.3d 1337, 1340 (11th Cir. 1994) (applying *Barker* factors, "requirements of due process were satisfied" because "most importantly, claimants could have avoided the prejudice by asserting their rights.").

Most pertinent here, "[i]f the claimant believes the initial seizure was improper, he could file a motion under Fed.R.Crim.P. 41(e) for a return of the seized property." *$8,850*, at 569. Despite Claimants' protests to the contrary, Claimants had a forum to be heard and air their grievances regarding forfeiture of the Defendant *in rem*. That forum could have been the parallel criminal case and the mechanism to do so could have been under Fed. R. Crim. P. 41(e).[13] *See United States v. Ninety-Three Firearms*, 330 F.3d 414, 425 (6th Cir. 2003) (noting civil forfeiture claimant "could have moved for the return of his seized property under Federal Rule of Criminal Procedure 41(e)").

The Court also disagrees with Claimants' contention that they have been "kept in the dark" by Government procrastination and that only since 2023 when this matter had been unsealed and the stay lifted was a spotlight available to them to challenge the deprivation of property. *See* (**ECF No. 33 at 3**); (**ECF Nos. 16, 17**); *United States v. Ninety-Three Firearms*, 330 F.3d at 425–26 (citing *$8,850*, at 569) (concluding that claimant's failure to pursue his property "'can be taken as some indication that [he] did not desire an early judicial hearing'" when claimant "neglected to pursue any of the myriad options available to him."). There is no evidence in the record, nor do Claimants contend they moved for return of the seized property under Fed. R. Crim. P. 41(e) in the parallel criminal matter. *See United States v. Fifty-Two Thousand & Eight Hundred*

---

[13]     Federal Rule of Criminal Procedure 41(e) states in part, "[a] person aggrieved by ... the deprivation of property, may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property."

Dollars ($52,800.00) in U.S. Currency & Int., 33 F.3d 1337 at 1340. The Court finds Claimants' inaction to assert their rights "weighs heavily against" them as they "could have and should have made some effort to expedite the forfeiture proceeding." *United States v. Scarfo*, 41 F.4th 136 at 222; *$52,800.00*, at 1341.

The last element is whether the claimant has been prejudiced by the delay. *$8,850*, at 569. "The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *Id.*

Claimants argue they have suffered "harm" since they have been "dispossessed of [their] property without a meaningful hearing pursuant to the due process guarantee." (**ECF No. 33 at 11**). Additionally, Claimants maintain the length of delay in litigating this action alone has resulted in their prejudice and reference *Doggett v. United States*, 505 U.S. 647 (1992) and its progeny in support. In brief, the contend, "the length of the delay" merits dismissal as "Doggett is *dispositive*." *Id.* at 13. (emphasis added).

The Court disagrees with Claimants' rigid application of *Doggett*. The *Doggett* Court noted, "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." Moreover, as noted, in *8,850, the Barker factors* "are guides . . . to assess whether the basic due process requirements" have been met. 461 U.S. 555, 565. Here, Claimants have not alleged or shown the delay impaired their ability to present a defense on the merits. Instead, they rely on the length of delay as the prejudice they have suffered. (**ECF No. 33 at 10-12, 15-19**). The Court finds this is not enough. *See United States v. $20,000 in U.S. Currency*, 589 F. Supp. 3d 240 at 260 ("The First Circuit Court of Appeals clarified . . . that delays after filing a complaint, where there is no prejudice to the claimant, do not violate due process") (citing *United States v.*

*Zorrilla-Echevarría*, 671 F.3d 1, 12 (1st Cir. 2011)); *see e.g.*, *United States v. Approximately $1.67 Million (US.) in Cash, Stock, & Other Valuable Assets*, 513 F.3d 991, 1000-02 (9th Cir. 2008) (holding a 58-month delay did not violate due process); *United States v. $292,888.04 in United States Currency*, 54 F.3d 564, 566-67 (9th Cir. 1995) (holding a 30-month delay did not violate due process).

Moreover, the Court cannot overlook the fact that Claimants' own inaction, as previously discussed, at the very least, exacerbated the very delay of which they now complain. *See United States v. $307,970.00, in U.S. Currency*, 156 F. Supp. 3d 708, 720 (E.D.N.C. 2016) (rejecting that "claimants should be allowed to both contribute to the overall delay in litigation and yet reap the benefit of that delay" when "claimants' own contribution to the delay" was "significant" under the *Barker* factors.) Accordingly, Claimants have not articulated any actual prejudice, therefore this factor favors the Government. *See $8,850*, at 569 (holding "balance of factors indicates that the [g]overnment's delay in instituting civil forfeiture proceedings was reasonable" based in part on absence of allegations "that the delay affected [claimant's] ability to defend the propriety of the forfeiture on the merits.").

On balance, the *Barker* factors do not establish a due process violation, even if the delay was significant. *See Barker v. Wingo*, 407 U.S. 514, 533 (1972) (finding "length of delay . . . well over five years—was extraordinary" however, defendant did not suffer "serious prejudice" because of the delay and "[m]ore importantly" defendant's inaction suggested he "acquiesced" to the delay, therefore he was "not deprived of his due process").

    ii.    <u>Evaluation of Claimants' Procedural and Eight Amendment Challenges</u>

Claimants raise several other procedural challenges, including: (1) failure to serve

and execute the warrant; (2) lack of proper notice; (3) the stay and seal were unreasonable and lacked a proper basis; and (4) the forfeiture of $12,698.38 constitutes an excessive and unreasonable fine in contravention of the Eight Amendment. (**ECF No. 33 at 18-26**).

In response, the Government argues that the: (1) execution of the warrant and any supplemental process was unnecessary, as the currency was in the government's possession; (2) as of March 25, 2015, Santana "had actual notice"; and (3) Claimants' Eight Amendment argument is premature. (**ECF No. 38 at 8-9**). As for the remainder of Claimants' arguments, the Government contends, they "are either incorrect factually or lack support in the applicable statutes or case law." *Id*. at 9.

First as to service and execution of the warrant, according to the Supplemental Rules, as here, the Defendant property is not real property and is already "in the government's possession, custody, or control," the clerk of the court "must issue a warrant to arrest the property." Supp. R. G(3) (b)(i). *United States v. $40,041.20 In U.S. Currency Seized From State Dep't Fed. Credit Union Acct. No. XXX786*, 12-cv-1771, 2012 WL 5409753, at *4 (D. Md. Nov. 5, 2012). The warrant is required to be delivered to a person or organization "authorized to execute it." Supp. R. G(3)(c)(i). *Id*. The authorized person or organization must then execute the warrant. Supp. R. G(3)(c)(ii). *Id*.

Here, the Warrant of Arrest *in rem* as to $12,698.38 in U.S. Currency issued by the Clerk of Court on September 25, 2013, stated in part, "defendant currency is currently in the possession, custody or control of the United States." (**ECF No. 8**). Subsequently, the U.S. Department of Treasury executed the return of the Complaint, Notice, and Warrant. (**ECF No. 36**). Accordingly, the service and execution requirements set forth in Supplemental Rule (G) have been met.

Next, as to notice, the Supplemental Rule (G) provides notice must be sent via "means reasonably calculated to reach the potential claimant." Additionally, it must include certain information, including (1) the date of the notice; (2) the deadline for filing a claim; (3) the deadline for filing an answer or Rule 12 motion; and (4) the name of the Government attorney to be served. Supp. R. G(4)(b)(ii)-(iii); *United States v. $40,041.20 in United States Currency Seized*, 12-cv-1771, 2012 U.S. Dist. LEXIS 158339, at *9 (D. Md. Nov. 5, 2012). Notwithstanding these requirements, Rule G(4)(b)(v) states explicitly, that "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." *$20,000*, at 257–58.

Here, Claimants had actual notice of the forfeiture case as early as March 25, 2015, per the Bill of Particulars.[14] Thus, Claimants were certainly aware of the seizure. *See $52,800.00*, at 1340-41 (finding claimants aware of property seizure did not suffer prejudice based on "government's procrastination in issuing the notice of seizure"). Despite lacking the information required under Supp. R. G(4)(b)(ii)-(iii), the Bill of Particulars, conferred actual notice to Claimants thus they cannot seek relief from forfeiture under Supp. R. G(4)(b)(v). *See United States v. Cuong Mach Binh Tieu,* 11-cr-00097, 2014 WL 6680524, at *4 (N.D. Cal. Nov. 25, 2014) (finding "government's unequivocal statement in the Bill of Particulars that it intended to seek forfeiture" of property foreclosed claimants from successfully claiming "inadequate notice" "even if any

---

[14]    The Bill of Particulars filed in *United States v. Morales-Dávila et al.*, 14-cr-00754-MAJ (D.P.R.), (**ECF No. 300 at 1**), states in part, "pursuant to Federal Rule of Criminal Procedure 32.2(a), [the Government] particularly alleges that the following properties are subject to forfeiture on the basis of the forfeiture allegations set forth in the Indictment . . . "Manager's check from First Bank of Puerto Rico (FBPR), in the amount of $12,698.39, to the order of U.S. Customs & Border Protection." This statement is also accompanied by a footnote, referencing the instant forfeiture action, "Civil Case No. 13-1707(DRD)." *Id.* at n. 4.

mailed notice was technically defective").

Finally, the Court agrees with the Government that Claimants' Eighth Amendment excessive fines argument is premature given forfeiture has not yet occurred. *See Medina-Rodríguez v. $3,072,266.59 in United States Currency,* 471 F. Supp. 3d 465, 481 (D.P.R. 2020) (finding "the claimants' Eighth Amendment claim" "premature" as the court "must make [the excessive fine] determination after determining whether forfeiture of the seized assets is appropriate.") (cleaned up). Accordingly, the Motion is **DENIED** as to Claimants' procedural arguments.[15]

## VI.    Conclusion

For the reasons stated above, the Government can proceed under the theory that the Defendant property is subject to forfeiture as structured currency. However, the Government has failed to adequately plead a money laundering claim under 18 U.S.C. §§ 981(a)(1)(A) and 1956. Thus, Claimants' Motion to Dismiss is **GRANTED** *in part* and **DENIED** *in part*. (**ECF No. 33**).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st  day of May, 2024.

*/s/* **María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**

---

[15]    As to Claimants' contention that the "more than 10-year stay of the case and seal of the proceedings for more than 10 years was unreasonable and lacked proper basis under the statute" (**ECF No. 33 at 21-24**) this has already been addressed in the Court's due process analysis. The Court declines to rehash that discussion here.